UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; and DOUG BURGUM in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>Defendants. | Case No. 25-2125<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue an initial determination ("90-day finding") on the Center's petition to list the Olympic marmot, in violation of the Endangered Species Act's ("ESA" or "Act") mandatory deadline. The Service's failure to meet the deadline delays lifesaving protections for the Olympic marmot, increasing the marmot's risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3)(A), by

COMPLAINT 1

failing to timely issue a 90-day finding for the Olympic marmot, and directing the Service to issue the finding by a date certain.



Photo Credit: Matt Duchow

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4. Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter to the Service dated May 15, 2025. Defendants

have not remedied the violations set out in the notice letter and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

6. Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 93,927 active members throughout the country and more than 4,000 members in Washington alone.

7. The Center brings this action on behalf of its members who derive recreational, educational, scientific, professional, and other benefits from the Olympic marmot and its habitat. Plaintiff's members' interests in protecting and recovering the marmot and its habitat are directly harmed by the Service's failure to issue a timely 90-day finding, delaying critical protections under the ESA that can put the Olympic marmot on a path to recovery.

8. For example, Center member John Bridge, President of Olympic Park Advocates, a non-profit dedicated to protecting Olympic National Park and the Olympic ecosystem, regularly surveys for Olympic marmots and has done so for the past ten years. Bridge participates in citizen scientist marmot surveys, leads alpine hikes in Olympic National Park, and through Olympic Park Advocates, works to conserve the marmot's habitat. Bridge went hiking in May 2025 to observe Olympic marmots and has specific, concrete plans to return to Olympic National Park in May and June of 2026 to observe Olympic marmots. Bridge has a professional and personal connection to Olympic marmots. The Service's delay in protecting the Olympic marmot under the ESA directly harms Bridge's professional, recreational, aesthetic, and moral interests in the marmot and its habitat. The marmot's disappearance would diminish Bridge's enjoyment of Olympic National Park and would undercut the conservation work of Olympic Park Advocates.

9. Defendants' violation of the ESA's deadline has delayed ESA protections for the Olympic marmot. This inaction harms Plaintiff's members' interests in the marmot by permitting the species' continued trajectory toward extinction, thereby decreasing the likelihood that the Center's members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries presently suffered by Plaintiff's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries by providing ESA protection for the Olympic marmot, thus promoting its conservation and recovery. Plaintiff and its members have no other adequate remedy at law.

10. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the Olympic marmot. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

11. Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

12. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

**STATUTORY FRAMEWORK**

13. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

14. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

15. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

16. The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

17. If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

18. The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

19. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

20. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

21. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

22. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

23. If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

24. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

25. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

26. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; *see also id.* § 1532(19) (defining "take"). Other provisions require the

Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

## FACTUAL BACKGROUND

27. Olympic marmots (*Marmota Olympus*) are a unique species of large, ground-dwelling squirrels that hibernate for eight months out of the year and emerge in the summer months to eat (doubling their body weight), forage, and what looks like sunbathing when they prone on a rock or dirt, but are really cooling off because they are unable to sweat.

28. Olympic marmots are endemic to the Olympic Peninsula in Washington and occur nowhere else on Earth. They are found almost entirely in the northeastern portion of Olympic National Park, in high-elevation subalpine and alpine meadows. They have an unusually low rate of reproduction and in the past thirty years have experienced a dramatic decline in numbers, including the extirpation of entire colonies.

29. Olympic marmots are social creatures that live in groups of 2-30 individuals. They tend to live in the same area for their entire life and appear to be unable (or unwilling) to migrate to new areas. Annual site surveys conducted by the National Park Service since 2010 have since shown that colonization of new areas appear to be very rare.

30. The marmot is primarily at risk because of changes to its habitat. Mountaintop ecosystems are vulnerable to impacts from climate change because those impacts cause treelines to rise in response to warmer temperatures. As treelines rise, marmots lose habitat because they are unable to migrate or colonize new areas. Instead, their habitats become smaller and fragmented.

31. Predation by coyotes is also leading to population declines of marmots. Coyotes moved into Olympic National Park after wolves were eradicated in the 20th century. While wolves do prey on marmots, they generally forage below the treeline. Climate change and warming temperatures are leading to snowpack retreating earlier in the spring, allowing coyotes to reach higher elevation areas earlier in the year, making it easier for coyotes to prey on

marmots emerging from hibernation. Female marmots face significant pressures because they have less time to forage and put on weight before returning to hibernation. Females tend to forage in the early morning and later into the evening, putting them at greater risk of predation by coyotes.



Photo Credit: Matt Duchow

32. Wildfires are also becoming more intense and frequent in and around Olympic National Park. For example, the Bear Gulch Fire reached the southern edge of the Olympic marmot's observed habitat. Despite an increase in rain and humidity in the fall, the Bear Gulch fire continues to persists due to extended periods of dry conditions.

33. Wildfires in the Olympic ecosystem are expected to increase, posing a threat to the marmot's future survival because the marmots are unable to flee or move from their burrows. Although marmots might be able to hide in their burrows during a small fire, their burrows are unlikely to be able to protect marmots from more intense, large fires, likely leading to death.


34. The marmot is further threatened by isolation of populations in the southwestern and southeastern portions of its range, threatening its long-term survival because this leads to less genetic transfer and therefore reduces the genetic fitness of the population and reproductive success.

**Listing Petition and Response**

35. The Center petitioned the Service to list the Olympic marmot on May 13, 2024. The Center's petition documented threats to the marmot from climate change, predation, and the effects of having a small, isolated population.

36. It has been over a year since the Service received the Center's petition to list the Olympic marmot as threatened or endangered under the ESA and to designate critical habitat concurrently with listing.

37. The Service has yet to issue a 90-day finding on the Center's petition to list the Olympic marmot even though the deadline for publication was May 13, 2025 (*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both 90-day finding and 12-month finding must be made within one year of receipt of a listing petition).

38. The Service's failure to publish a timely 90-day finding on the Center's petition has also led to a delay in the Service's statutorily required 12-month finding. 16 U.S.C § 1533(b)(3)(B) (the Service must make a 12-month finding no later than one-year from receipt of the petition).

39. Thus, the Service's 90-day finding on the Center's petition to list the Olympic marmot is past due.

<div align="center"><b><u>CLAIM FOR RELIEF</u></b></div>

**Violations of the ESA for Failure to Publish a Timely 90-Day Finding for the Olympic marmot**

40. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

41. The ESA provides the Service with some leeway in publishing its initial finding within 90-days of receipt of the petition "to the maximum extent practicable," but in no case longer than one year. 16 U.S.C § 1533(b)(3)(A); *Biodiversity Legal Found.,* 309 F.3d at 1176.

42. The Service has yet to issue the required 90-day finding for the Olympic marmot.

43. Defendants failed to perform their nondiscretionary duty to timely publish a timely 90-day finding in violation of the ESA. 16 U.S.C. § 1533(b)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue a timely 90-day finding in response to the Center's petition to list the Olympic marmot under the ESA;

2. Provide injunctive relief compelling Defendants to issue the 90-day finding by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 29th day of October 2025.

*s/ Sarah Uhlemann*
Sarah Uhlemann (WA Bar No. 41164)
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344
suhlemann@biologicaldiversity.org

Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374

(971) 717-6402
ccossio@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*